Sergey and Irina VICHES, Jerry and Barbara Reams, Thomas and Sonja Angelo, Gregory and Vera Schwartsburg, Arkady and Nelli Ginzburg, Igor and Daniel Ginzburg, as representative of a class of similarly situated people, Plaintiffs,

v.

MLT, INC., d/b/a MLT Vacations, Allegro Resorts Dominica, S.A., a foreign corporation, Allegro Resorts Inc., n/k/a Allegro Resorts Marketing Corporation, a Florida corporation, and Hotel Luperon Beach Resorts, S.A., a foreign corporation, Defendants.

No. CIV. A. 98–40395.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 28, 2000.

Harvey K. Babcock, Harvey Babcock Assoc., Farmington Hills, MI, for plaintiff.

Craig S. Harwood, Rubin, Hay, Farmingham, MA, John W. Mulcrone, Sullivan, Ward, Southfield, MI, Kathryn L. Ossian, Miller, Canfield, Detroit, MI, James M. Pelland, Miller, Canfield, Detroit, MI, Richard G. Ward, Sullivan, Ward, Southfield, MI, Greg Zlatopolsky, Farmington Hills, MI, for defendant.

## ORDER

GADOLA, District Judge.

Before the Court is the motion for summary judgment of Defendants Allegro Resorts Dominica, S.A. ("Allegro Dominica") and Allegro Resorts Marketing Corporation ("Allegro Marketing"). For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## I BACKGROUND

Plaintiffs are Michigan residents who allege that they were injured while on vacation in February 1998 at the Hotel Luperon, which Defendant Hotel Luperon Beach Resorts, S.A. ("Luperon") owned and operated in the Dominican Republic. The cause of Plaintiffs' alleged physical harm was the spraying of pesticide during Plaintiffs' stay at the Hotel Luperon. According to Plaintiffs, those ailments lasted after their return to Michigan, and required Plaintiffs to undergo medical treatment in Michigan.

Plaintiffs allege further that they arranged to go on vacation at Luperon through MLT, Inc., a tour operator that conducts business in Michigan. Defendant Allegro Dominica is a corporation of the Dominican Republic and was franchisor to Luperon during the events in question. Defendant Allegro Marketing is a Florida corporation that allegedly owned Allegro Dominica and marketed services to Michigan residents through MLT.

Plaintiffs seek to recover from the Allegro Defendants on the grounds of negligence, loss of consortium, and violations of Michigan's Consumer Protection Act. The Allegro Defendants seek summary judgment on the grounds that the Court lacks personal jurisdiction over them, that they are not liable for the alleged torts of Luperon, and that they did not, as a matter of law, violate Michigan's Consumer Protection statute.

## II  LEGAL STANDARD

The Court will grant a motion for summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III  ANALYSIS

### A.  Personal Jurisdiction

■ To survive summary judgment, Plaintiffs must make a prima facie case of personal jurisdiction. *See Denham v. Sampson Investments,* 997 F.Supp. 840, 842 (E.D.Mich.1998) (Gadola, J.) (citing cases). To meet this burden where, as here, diversity is the basis of subject-matter jurisdiction, Plaintiffs must show that (1) the Michigan long-arm statute supports the Court's exercise of personal jurisdiction and (2) the exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *See id.* (citing cases).

Michigan's long-arm statute is as follows:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

M.C.L.A. § 600.715.

■ In their response to the Allegro Defendants' motion for summary judgment, Plaintiffs seem to concentrate their attention on § 600.715(1), arguing that the Allegro Defendants' allegedly did business in Michigan. The standard for deciding whether a party has transacted any business under § 600.715(1) is extraordinarily easy to meet. "[T]he only real limitation placed on this [long arm] statute is the due process clause." *Schmidt v. Wilbur,* 775 F.Supp. 216, 221 (E.D.Mich.1991) (Gadola, J.) (quoting *Kiefer v. May,* 46 Mich.App. 566, 571, 208 N.W.2d 539 (1973)).

I therefore turn to the issue of whether assertion of personal jurisdiction over Defendants would pass muster under the Due Process Clause. The Due Process Clause requires Plaintiffs to show that Defendants have "minimum contacts" with Michigan "such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

▆ Regarding minimum contacts, Plaintiffs must establish that Defendants purposefully availed themselves of the privilege of acting within Michigan. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The unilateral acts of a third party cannot by themselves create personal jurisdiction. *See id.* Plaintiffs must either show that Defendants' purposeful availment created "continuous and systematic contacts" with Michigan, which would support a claim of general jurisdiction, or they must establish that specific jurisdiction is warranted. *See Denham*, 997 F.Supp. at 842 (citing cases). To establish specific jurisdiction, Plaintiffs must show that: (1) Defendants purposefully availed themselves of the privilege of acting within Michigan; (2) the cause of action arose from Defendants' activities in Michigan; and (3) Defendants' acts, or the consequences of those acts, have a substantial enough connection with Michigan to make the exercise of jurisdiction reasonable. *See LAK v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) (citation omitted).

▆ Because Plaintiffs do not allege that there is general jurisdiction over Defendants, I now turn to the question of whether the Court has specific jurisdiction over Defendants.

### 1. Purposeful Availment

Plaintiffs support the contention that purposeful availment exists on the ground that Defendants are liable through the acts of Luperon, which allegedly conducted business in Michigan as Defendants' agent. For reasons discussed *infra*, Luperon was not the agent of Defendants, and its acts could not therefore create purposeful availment on behalf of Defendants.

Plaintiffs also assert that purposeful availment exists because Defendants, "as nonresident corporations, availed themselves of the privilege of conducting business through their agent, MLT, Inc. As a result of this business, Plaintiffs were injured." Plaintiffs aver no facts, however, from which the Court could conclude that MLT, Inc. was the Allegro Defendants' agent. They have not even adduced evidence of a contract that authorized MLT to conduct business on the Allegro Defendants' behalf. The Court is thus left with the allegation that Defendants, as entities that allegedly controlled, and advertised for, a foreign hotel, satisfied purposeful availment by allowing a tour operator to book tourists in Hotel Luperon.

This allegation, even if true, would not be enough to establish the element of purposeful availment. This Court's opinion in the *Denham* case illustrates why this is so. In *Denham*, the plaintiff had reserved a room in the defendants' Wisconsin hotel after the defendant had provided the New York office of Alcoholics Anonymous ("AA") with brochures and reservation cards for an AA convention, and AA in turn sent those materials to the plaintiff. *See Denham*, 997 F.Supp. at 843. This case is analogous to *Denham* in that Plaintiffs allege that they reserved a room in the Hotel Luperon after the Allegro Defendants had provided a tour operator with information about the hotel, and the tour operator in turn disseminated that information to Plaintiffs. Because the contacts upon which Plaintiffs rely are no more extensive than the contacts the Court found, as a matter of law, were insufficient to create purposeful availment in *Denham*, the Court grants Defendants' motion with regard to personal jurisdiction.

Plaintiffs' argument that *Catalano v. BRI, Inc.*, 724 F.Supp. 1580 (E.D.Mich. 1989) dictates the opposite result is misguided. The *Catalano* court, as this Court has made clear, predicated its finding of purposeful availment on the fact that the defendant hotel *had retained an agent, American Airlines, that maintained sales offices in Michigan* and was authorized to market rooms to people in Michigan. *See Denham*, 997 F.Supp. at 845. In this case,

Plaintiffs have provided no facts from which a reasonable juror could infer that Defendants had retained an agent that maintained offices in Michigan. The contacts in *Catalano,* accordingly, were far more extensive than the relevant contacts in *Denham* or the contacts Plaintiffs allege in this case. *Catalano* provides inadequate support for Plaintiffs' position regarding purposeful availment.

The Court concludes that it lacks personal jurisdiction over Defendants, and it grants summary judgment on that basis.

### B. Negligence

■ An alternative ground for granting summary judgment to the Allegro Defendants regarding the claim of negligence is that they are not liable for the alleged torts of Luperon.

■ Plaintiffs argue that Allegro Dominica is liable as a principal for its alleged agent, the Hotel Luperon, and that Allegro Marketing is liable because it, in turn, owns Allegro Dominica. Whether a franchisor is vicariously liable for the torts of its franchisee hinges on whether a principal-agent relationship exists. *See Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W.2d 390, 393 (1990) (citations omitted). To determine whether such a relationship existed here, the Court must assess whether the alleged principal had a right to control the alleged agent's actions. *See id.* (citations omitted). In the context of a franchisor-franchisee relationship, the salient question is whether the franchisor controlled the "day-to-day operations of" the franchisee. *Id.*

Plaintiffs plead the following facts, upon which they argue that an agency relationship existed. First, Defendants supplied a menu to be followed daily. This menu mandated certain "table settings, place settings, and even how to fold the napkins." Second, Plaintiffs aver that Defendants "maintained policies concerning job duties and responsibilities, which were specifically laid out by job position, and it even included an Employee Internal Promotion procedure because [i]t is an Allegro

Resort policy to give *our* staff the opportunity to develop professionally." Third, Plaintiffs allege that Defendants' operations-manual specified how the hotel had to take reservations, and included extensive directions on how to conduct housekeeping. Finally, Plaintiffs allege that Defendants had the right to inspect the hotel periodically to ensure compliance with the franchise agreement, and had the right to terminate the agreement or sanction the Hotel Luperon.

Defendants retort that all of the facts upon which Plaintiffs rely relate to the imposition of uniform practices as part of the franchise agreement. Such a policy, Defendants reason, does not equate to an agency relationship.

■ Defendants are right. All that the franchise agreement in this case does is give Defendants control over the quality of services its franchisee provides. A franchisor's insuring the "uniformity and standardization of . . . services," however, does not give rise to an agency relationship. *Little,* 455 N.W.2d at 394; *accord Neff v. American Dairy Queen Corp.,* 58 F.3d 1063 (5th Cir.1995); *Wu v. Dunkin' Donuts, Inc.,* 105 F.Supp.2d 83, 88 (S.D.N.Y. 2000) (observing that "[m]ost courts have found that retaining a right to enforce standards or to terminate an agreement for failure to meet standards" does not create an agency relationship); *Dahlberg v. Avis Rent A Car System, Inc.,* 92 F.Supp.2d 1091, 1102–04 (D.Colo.2000).

The Court thus concludes that the Allegro Defendants do not have an agency relationship with Luperon, and thus are not liable for its torts. The Court grants Defendants' motion for summary judgment regarding the negligence claim on this alternate ground.

### C. Loss of Consortium

For the above reasons, the Allegro Defendants are, as a matter of law, not liable to Plaintiffs in negligence. Because loss of consortium is derivative from a claim of negligence, the Court grants Defendants' motion with regard to this claim on the

alternate ground that Defendants are not liable to Plaintiffs for Luperon's alleged negligence.

### D. Michigan's Consumer Protection Statute

Plaintiffs allege that the Allegro Defendants violated Michigan's Consumer Protection Act, M.C.L. § 445.901 *et seq.* All of the specific violations of this Act that Plaintiffs allege, however, are grounded in the alleged actions of Defendants MLT and Luperon. Because Plaintiffs have failed to plead facts from which a reasonable juror could conclude that the Allegro Defendants had an agency relationship with either MLT or Luperon, the Court grants summary judgment with regard to this claim on the alternate ground that Defendants are not liable for MLT or Luperon's actions.

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 101] is **GRANTED**.

**SO ORDERED.**